## No. 79SA107

**The People of the State of Colorado in the Interest of V.A.E.Y.H.D., a child, upon the petition of O.R., and concerning M.D., a/k/a M.E.D., and also concerning E.C.**

(605 P.2d 916)

Decided February 4, 1980.

Max P. Zall, City Attorney, Robert A. Powell, Assistant, for petitioner-appellee.

Martin A. Mansfield, Jr., for respondent-appellant.

Robert T. Page, for Guardian Ad Litem.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

This is an appeal from a judgment of the Denver Juvenile Court terminating parental rights in V.A.E.Y.H.D., a minor child. We affirm.[1]

In April of 1975, a petition was filed by the Denver Department of Social Services, alleging that the child was a neglected and dependent child, and praying for protective orders and for termination of the parental rights of the respondent parents. The child was placed in the temporary custody of the Denver Department of Social Services.[2] An adjudicatory hearing was held in March 1976. The court sustained the petition in part but continued the matter in accordance with section 19-3-106(3), C.R.S. 1973 (1978 Repl. Vol. 8) and established certain conditions which the mother was required to satisfy in order to regain custody of the child. In April 1977, the juvenile court issued findings of fact and conclusions of

---

[1] Although the child was found to be dependent and neglected as to both parents and parental rights of both the parents were terminated, only the mother appealed.

[2] The record provided this court on appeal does not discuss the reasons for this placement.

law. The court found the child to be a dependent and neglected child as to the mother, based on the following findings: (1) the child suffered from organic brain syndrome, and had special emotional, medical, and physical needs which were not being met by her mother, M.D.; (2) the child showed significant lack of development and lack of attachment because of the mother's "use of drugs and her attendant life style," which resulted in placement of the child with various relatives and with the state; (3) the child's medical, emotional, and physical well-being was impaired to a degree that she had no chance of progressing satisfactorily in life without court intervention; and (4) the child's environment was injurious to her welfare. The latter finding is the ultimate one upon which the child was adjudicated to be dependent and neglected pursuant to section 19-1-103(20)(c), C.R.S. 1973 (1978 Repl. Vol. 8).

In an attempt to remedy the home situation and return the child to her mother in the future, the court ordered a treatment plan for the mother, which required that she remain drug-free, attend parenting classes, enroll in a methadone program, receive individual psychotherapy, and accept homemaker services.

In February, 1978, after new counsel had been appointed to represent the mother, the mother filed a motion to dismiss the petition on the basis that the statutory criterion "[w]hose environment is injurious to his welfare," section 19-1-103(20)(c), C.R.S. 1973 (1978 Repl. Vol. 8), on its face is void for vagueness and overbreadth and could not serve as a foundation for proceedings which might result in termination of parental rights. That motion was heard and denied on May 16, 1978, and at that same hearing the court heard testimony on the application to terminate parental rights.

On July 11, 1978, the court issued an order terminating parental rights of both parents. The order contains extensive, detailed findings and conclusions with respect to failure of the mother to comply with the treatment plan, unfitness of the parents, failure of reasonable effort by various agencies in Denver to rehabilitate either parent, unlikelihood that the conduct or condition of the parents would change, and absence of benefit to the child in maintaining a parent-child relationship with either parent. Without detailing these facts further, suffice it to say that they support the termination of parental rights in accordance with the criteria established in *People, Int. of M.B.*, 188 Colo. 370, 535 P.2d 192 (1975), and *People, Int. of M.M.*, 184 Colo. 298, 520 P.2d 128 (1974), as a result of which the statute was amended. Section 19-11-105, C.R.S. 1973 (1978 Repl. Vol. 8).

The mother appeals from that ruling on two grounds: (1) that section 19-1-103(20)(c), C.R.S. 1973 (1978 Repl. Vol. 8) is void for vagueness and overbreadth, in violation of her right to due process of law; and (2) that she was deprived of effective assistance of counsel at the termination hearing.

## I.

■ Respondent mother argues that the statutory language — "whose environment is injurious to [her] welfare" — assigned by the court as the ground for the finding of dependency and neglect in this case provides an unconstitutionally vague and overbroad standard. We do not agree.

Although the language found in section 19-1-103(20)(c) has not heretofore been construed by this court, the identical statutory language has been held to be constitutionally sufficient by courts of other jurisdictions. In *Matter of D.T.*, 237 N.W.2d 166 (S.D. 1975), the court concluded that the phrase "whose environment is injurious to [the child's] welfare" conveyed "sufficiently definite warning as to proscribed conduct when measured by common understanding and practice. . . . [The statute] provides standards which the average intelligent person can understand and from which he can regulate his conduct. Thus, there is no violation of the constitutional right of due process." *Matter of D.T., supra.*

The same language is found in the Illinois statutes, and when challenged as vague and overly broad, the Illinois court held that the language was constitutional, reasoning "[c]hild neglect is by its very nature incapable of a precise and detailed definition . . .," and that the statute was as specific as possible under the circumstances. *People v. Schoos,* 15 Ill. App. 3d 964, 305 N.E.2d 560 (1973), *appeal dismissed* 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1135 (1974).

We agree with the conclusion reached by these courts, and hold that the challenged language set out in section 19-1-103(20)(c), C.R.S. 1973 (1978 Repl. Vol. 8) is not unconstitutionally vague and overbroad.

■ We also note that the juvenile court, in March 1976, at the conclusion of the adjudicatory hearing and more than one year prior to the finding of neglect and dependency, gave the mother specific notice of what it considered to be an injurious environment for the child when it directed a program of rehabilitation which she was to follow if she desired to regain custody of her child. The mother failed to successfully follow this program. She cannot now say that she was unaware of the areas of concern to the court. *See Weissman v. Bd. of Ed.*, 190 Colo. 414, 547 P.2d 1267 (1976).

## II.

Appellant next contends that she was denied effective assistance of counsel at the termination hearing. The record made available to this court does not support that assertion. The record shows that her counsel ably represented her within the limits of the information she made available to them and of the cooperation afforded in the preparation of her case.

At the termination hearing in 1978, counsel for appellant requested a continuance, stating that the respondent mother had not been in contact with counsel "for quite some period of time," that counsel did not know of any witnesses the mother wanted to call, and that counsel did not feel she could adequately represent her under these circumstances. The court denied the continuance, noting that counsel had been granted a continuance three months earlier on the same grounds.

We recognize that a parent has a right to counsel at a termination of parental rights hearing. Section 19-1-106(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8). A parent also has a right, if indigent, to a court-appointed attorney. Section 19-1-106(1)(b), C.R.S. 1973 (1978 Repl. Vol. 8). After reviewing the record here, however, we conclude that the juvenile court was painstaking in its efforts to ensure that appellant had adequate assistance of counsel and sufficient time to prepare her case.

Appellant had a total of four court-appointed attorneys in this action. One withdrew for personal reasons, two cited appellant's failure to cooperate as a reason for their requests to withdraw, and the fourth was appointed by the court to represent her on appeal. In addition, the court allowed three continuances of the termination hearing over a period of fourteen months in order to give counsel time to prepare the case. Each time, appellant failed to communicate with her attorney and to cooperate in the preparation of the case.

The granting or denying of a motion for continuance lies within the sound discretion of the court. A judgment will not be set aside on appeal for failure to grant a continuance unless there was a clear abuse of discretion. *Wafer v. People,* 175 Colo. 332, 488 P.2d 73 (1971). We conclude that the court did not abuse its discretion in denying yet another continuance in this case, particularly in the light of appellant's failure to demonstrate that a continuance would have allowed her to develop relevant or material evidence that was not discoverable prior to the date of the termination hearing.

Any alleged failure of adequate assistance of counsel, under the circumstances of this case, is attributable to appellant, not to her various counsel, or to the court. By her repeated refusal to cooperate with her court-appointed attorneys, we hold that the appellant cannot assert as a ground for reversal on appeal ineffective assistance of counsel.

Accordingly, we affirm the judgment.