**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Everett Fred ALLEN, Defendant-Appellee.**

**No. 81SA472.**

Supreme Court of Colorado, En Banc.

Jan. 24, 1983.

---

Robert R. Gallagher, Jr., Dist. Atty., Catherine P. Richardson, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

Davis & Fritsche, William J. Fritsche, Aurora, for defendant-appellee.

DUBOFSKY, Justice.

The People appeal the ruling of the Pueblo district court[1] that section 18–9–202, C.R.S.1973 (1978 Repl.Vol. 8),[2] which prohibits cruelty to animals, is unconstitutionally vague. The defendant, Everett Allen, cross-appeals the district court's ruling that he lacked standing to challenge section 18–9–202 as unconstitutionally overbroad. We affirm in part, reverse in part, and remand the case for further proceedings.

The defendant was charged under section 18–9–202 with "neglect of animals" committed between January 19 and April 7, 1979. The bill of particulars described in detail the eight emaciated horses which were the subject of the complaint.

---

1. The case was initially filed in Arapahoe County Court, but was transferred to Pueblo County Court in response to the defendant's motion for change of venue.

2. The pertinent parts of section 18–9–202 provide:

"(1) A person commits cruelty to animals if, except as authorized by law, he knowingly or with criminal negligence overdrives, overloads, overworks, tortures, torments, deprives of necessary sustenance, unnecessarily or cruelly beats, needlessly mutilates, needlessly kills, carries in or upon any vehicles in a cruel manner, or otherwise mistreats or neglects any animal, or causes or procures it to be done, or, having the charge and custody of any animal, fails to provide it with proper food, drink, or protection from the weather, or abandons it.

(2)(a) Cruelty to animals is a class 1 misdemeanor."

Allen moved to dismiss the charges on the ground that section 18–9–202 was unconstitutionally vague and overbroad.[3] At the hearing on the defendant's motion, the People indicated their intention to proceed under that portion of section 18–9–202 proscribing neglect, which is defined in section 18–9–201 as "failure to provide food, water, protection from the elements, opportunity for exercise, or other care normal, usual, and proper for an animal's health and well-being." The county court found section 18–9–202 to be both vague and overbroad, and granted the defendant's motion to dismiss. On appeal, the district court affirmed the county court's holding that section 18–9–202 was unconstitutionally vague[4] but reversed the county court's holding that the statute was overbroad, ruling that the defendant did not have standing to raise the overbreadth challenge. The People appeal the district court's order of dismissal,[5] and the defendant cross-appeals the ruling on standing.

## I.

 A penal statute is unconstitutionally vague if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Jennings,* 641 P.2d 276 (Colo.1982). Criminal statutes should be framed with clarity sufficient to inform the persons subject to them of the standards of conduct imposed and to give fair warning of which acts are forbidden.

*Id.* This is not to say, however, that due process of law requires mathematical exactitude in legislative draftsmanship. We have recognized that while the statute must be sufficiently specific to give fair warning of the proscribed conduct, it also must remain "sufficiently general to address the essential problem under varied circumstances and during changing times." *Colorado Auto and Truck Wreckers v. Department of Revenue,* 618 P.2d 646, 651 (Colo.1980). Due process of law is satisfied as long as the statutory terms "are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an evenhanded manner by those responsible for enforcing the law." *People v. Castro,* 657 P.2d 932 at 939 (1983), slip op. at 11–12, quoting *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547, 551 (Colo.1982); *see also, e.g., People v. McKnight,* 626 P.2d 678 (Colo.1981); *People v. Latsis,* 195 Colo. 411, 578 P.2d 1055 (1978); *People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978).

 The district court held that the use of a statutory standard punishing the "failure to provide food, water, protection from the elements, opportunity for exercise, or other care normal, usual, and proper for an animal's health and well-being" gives no warning of the type of conduct which is proscribed. The fact that a statute is cast in general terms does not automatically render it unconstitutionally vague, however. The necessity of providing standards flexible enough to ensure the effective ap-

---

**3.** As is noted in text, *infra,* the statutory language to which the defendant objected and which the courts below found vague is in section 18–9–201, which contains definitions of "neglect" and other terms in section 18–9–202.

**4.** In its opinion affirming the order of dismissal, the district court assumed that the words "normal, usual, and proper" were the basis of the county court's vagueness ruling, but speculated that another ground could be that section 18–9–202 may be violated by acts committed with either of two culpable mental states: "knowingly" or "with criminal negligence." The defendant never argued that the existence of alternative culpable mental states makes the

statute vague, nor did the county court hear argument or base its ruling on that point. As part of its constitutional power to define criminal conduct and to establish the elements of criminal liability, the General Assembly may make a judgment that the act of cruelty to animals is equally reprehensible whether committed knowingly or with criminal negligence. *See People v. Aragon,* 653 P.2d 715 (Colo.1982).

**5.** Section 16–12–102, C.R.S.1973 (1978 Repl. Vol. 8) requires the district attorney to appeal any order in a criminal case adjudging a statute unconstitutional.

plication of legislative policy to changing circumstances frequently requires the use of such words as "reasonable," "competent," "proper," and "fair." Without such words, the legislative standard may be evaded without violating the law. Sands, *Sutherland Statutory Construction* § 21.16 (4th Ed.1972).

We have often evaluated the constitutionality of similar statutory standards proscribing child abuse. The principles developed in the child abuse and neglect cases are appropriately applied to the analysis of the statute forbidding cruelty to or neglect of animals. The owners and custodians of animals, no less than the parents and guardians of children, can comprehend the statute's prohibition against cruelty and neglect and can conform their behavior to the standard mandating proper food, water, and protection from the elements. In *People in the Interest of V.A.E.Y.H.D.,* 199 Colo. 148, 605 P.2d 916 (1980), we held that the phrase "environment . . . injurious to [the child's] welfare" conveyed sufficiently definite warning of proscribed conduct when measured by common understanding and practice. 605 P.2d at 918. *Accord, Matter of D.T.,* 89 S.D. 590, 237 N.W.2d 166 (1975); and *People v. Schoos,* 15 Ill.App.3d 964, 305 N.E.2d 560 (1973), *appeal dismissed* 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1135 (1974). In *Schoos,* the Illinois Court of Appeals found the language "environment . . . injurious to [the child's] welfare" constitutional, reasoning that "[c]hild neglect is by its very nature incapable of a precise and detailed definition." 305 N.E.2d at 562. We determined that the language defining child abuse as conduct which may "endanger the child's . . . health" was not unconstitutionally vague in *People v. Hoehl,* 193 Colo. 557, 568 P.2d 484 (1977), and noted that " 'health' is a term readily comprehended and applied by jurors." The statutory language defining a neglected or dependent child as one "subjected . . . to mistreatment or abuse" withstood a vagueness challenge in *People in the Interest of D.A.K.,* 198 Colo. 11, 596 P.2d 747 (1979). We stated in *D.A.K.* that an ordinarily reasonable parent can understand what it means to abuse and mistreat a child, and that fundamental fairness does not require a statute to enumerate the proscribed conduct in all-encompassing examples. 596 P.2d at 751. *Accord, State v. McMaster,* 259 Or. 291, 486 P.2d 567 (1971).

■ Like the child abuse and neglect statutes, section 18–9–202 is "as explicit as could be in order to accomplish the purposes intended. . . . A legislature would find it extremely difficult, if not impossible, to write a statute more specific. . . ." *People in the Interest of D.A.K., supra,* 596 P.2d at 751. All 50 states and the District of Columbia have enacted statutes outlawing cruelty to animals. Forty-three other jurisdictions have established a standard of care in terms identical to or synonymous with that of Colorado: "proper," "adequate," "sufficient," or "necessary." [6] The remain-

---

6. Cal. Penal Code § 597 (West 1982 Supp.); Conn.Gen.Stat. § 53–247 (1981); Del.Code Ann. tit. 11, § 1325 (1974) (1979 Repl.Vol.); D.C.Code Ann. § 22–801 (1981); Fla.Stat.Ann. § 828.12 (West 1974); Hawaii Rev.Stat. § 711–1109 (1968) (1976 Repl.); Idaho Code § 18–2102 (1949) (1982 Supp.); Ill.Ann.Stat. ch. 8, § 703 (Smith-Hurd 1975); Iowa Code § 717.2 (1981); Kan.Stat.Ann. § 21–4310 (1981); Ky. Rev.Stat. § 525.130 (1975); Me.Rev.Stat.Ann. tit. 17–A, § 510 (1982); Md.Ann.Code art. 27 § 59 (1957) (1982 Repl.Vol. 3A); Mass.Gen. Laws Ann. ch. 272, § 77 (West 1972); Mich. Stat.Ann. § 28.161 [M.C.L.A. § 752.21] (Callaghan 1981 Rev.); Minn.Stat. § 346.21 (1980) (1981 Supp.); Miss.Code Ann. § 97–41–1 (1972); Mo.Ann.Stat. § 578.060 (Vernon 1979); Mont.Code Ann. § 45–8–211 (1981); Neb.Rev. Stat. § 28–1001 (1979); Nev.Rev.Stat. § 574.- 100 (1981); N.H.Rev.Stat.Ann. § 644.8 (1974) (1981 Supp.); N.J.Rev.Stat. § 4:22–26 (1973); N.M.Stat.Ann. § 30–18–1 (1978); N.Y.Agric. & Mkts. § 353 (McKinney 1972); N.C.Gen.Stat. § 14–360 (1981); N.D.Cent.Code § 36–21.1–02 (1980); Ohio Rev.Code Ann. tit. 9, § 959.13 (Page 1968) (1981 Supp.); Okla.Stat.Ann. tit. 21, § 1685 (West 1958); Or.Rev.Stat. § 167.860 (1981); Pa.Cons.Stat.Ann. tit. 18, § 5511 (Purdon 1973) (1981 Supp.); R.I.Gen.Laws § 4–1–2 (1976) (1982 Cum.Supp.); S.C.Code Ann. § 47–1–40 (Law.Co-op.1976); S.D. Codified Laws Ann. § 40–1–2 (1977); Tenn.Code Ann. § 39–404 (1975 Repl.Vol. 7); Tex.Penal Code § 42.11 (Vernon 1974) (1982 Supp.); Utah Code Ann. § 76–9–301 (1953) (1978 Repl.Vol. 8B); Vt. Stat.Ann. tit. 13, § 403 (1974); Va.Code § 18.- 2–392 (1950) (1982 Repl.Vol. 4); Wash.Rev. Code § 16.52.070 (1981); W.Va.Code § 61–8–

ing seven jurisdictions use a standard which is equally general: "neglect" or "unjustifiable pain, suffering or death." [7] The drafters of the Model Penal Code stated that "[t]he obvious difficulty in defining cruelty cannot be solved by using more words, as the ... typical legislative provision demonstrates," and resolved the dilemma in the Code by the use of "cruel mistreatment" and "cruel neglect." Model Penal Code § 250.6 comments to tentative draft No. 13 (1961).

Vagueness challenges to several of the statutes prohibiting cruelty to animals in terms similar to those of section 18–9–202 have not succeeded. *State v. Groseclose,* 67 Idaho 71, 171 P.2d 863 (1946) (sustaining the constitutionality of the statutory language "proper care and attention;" "just what the words ... mean may well cause a difference of opinion, but [this] does not render it too vague or uncertain to be enforceable"); *Ferrias v. People,* 71 Ill.App. 559 (1897) ("proper," as used in statute punishing failure to provide animals with proper food and drink, is to be understood in its ordinary sense); *Moore v. State,* 183 Ind. 114, 107 N.E. 1 (1914) ("necessary sustenance" and "proper food, drink, shelter, or protection from the weather" sufficiently definite); *State v. Hafle,* 52 Ohio App.3d 9, 367 N.E.2d 1226 (1977) ("necessary sustenance" not unconstitutionally vague); *King v. State,* 75 Okl.Cr.R. 210, 130 P.2d 105 (1942) ("necessary food, drink, or shelter" not unconstitutionally vague); *McCall v. State,* 540 S.W.2d 717 (Tex.Cr.App.1976) ("necessary food, care, or shelter" sufficiently informs an accused of the nature and cause of the accusation against him and is not unconstitutionally indefinite); *State v. Persons,* 114 Vt. 435, 46 A.2d 854 (1946) (statute proscribing failure to give "proper food and drink" not so uncertain or indefinite as to deny due process). *See also Wilkerson v. State,* 401 So.2d 1110 (Fla.1981) ("unnecessarily" in statute proscribing "unnecessarily ... deprives of necessary sustenance or shelter, or unnecessarily or cruelly beats ... any animal" not unconstitutionally vague; "criminal laws are not 'vague' simply because the conduct prohibited is described in general language"); *State v. Kaneakua,* 597 P.2d 590 (Hawaii 1979) (upholding statute proscribing "cruelty to animals" as not unconstitutionally vague).

The defendant relies on *People v. Tabron,* 190 Colo. 161, 544 P.2d 380 (1976) to argue that the possibility of varying interpretations of the cruelty to animals statute across the state renders the statute unconstitutional. *Tabron* held that in prosecutions under the Colorado obscenity statute, then found in 1971 Perm.Supp., C.R.S.1963, 40–70–101 *et seq.,* a statewide standard must be used to define obscenity because a local interpretation would impinge upon an individual's First Amendment freedoms. The defendant's reliance on *Tabron* is misplaced because its holding does not apply to other types of criminal statutes. Instead, the ordinary principles of criminal justice provide the uniform treatment the defendant seeks.

In prosecutions under section 18–9–202, as with prosecutions under other sections of the Colorado Criminal Code, jury instructions customarily are given in the language of the statute itself, *Blincoe v. People,* 178 Colo. 34, 494 P.2d 1285 (1972), *Bustamonte v. People,* 157 Colo. 146, 401 P.2d 597 (1965) and necessarily inform the jury of each of the elements of the offense. *People v. Mattas,* 645 P.2d 254 (Colo.1982). Section 18–9–201 contains definitions of the basic terms contained in section 18–9–202. By its own terms, section 18–9–201 requires that these definitions be used in interpreting section 18–9–202.

We conclude that the language of the cruelty to animals statute may be readily comprehended and applied by jurors.

19 (1977) (Repl.Vol. 17); Wis.Stat.Ann. § 948.-13 (1982); Wyo.Stat. § 11–29–102 (1977).

**7.** Ala.Code § 13A–11–14 (1977); Alaska Stat. § 11.61.140 (1962); Ariz.Rev.Stat.Ann. § 13–2910 (1956); Ark.Stat.Ann. § 41–2962 (1947)

(1977 Repl.Vol. 4); Ga.Code Ann. § 26–2802 (1933) (1977 Rev.); Ind.Code Ann. § 35–46–3–2 (Burns 1979); La.Rev.Stat.Ann. tit. 14 § 102 (West 1982).

Therefore, we hold that section 18–9–202 is not unconstitutionally vague, and that the defendant has not been denied due process by the application of the statute to him.

## II.

The district court reversed the order of the county court holding that section 18–9–202 was unconstitutionally overbroad. We agree with the district court. The defendant argues that because section 18–9–202 could be the basis for the prosecution of an animal owner who left a pet with a boarding kennel which then failed to feed the pet, the statute is unconstitutional. Whatever the merit of this argument, we need not consider it because the hypothetical situation is not the factual context of this case. One who challenges a statute as unconstitutionally overbroad must be affected directly by the claimed overbroad aspects of the statute. *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975); *State v. Kaneakua, supra.* Thus, the defendant has no standing to challenge section 18–9–202 on the basis of alleged overbreadth.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings.